Charles W. DIBNER

v.

MAINE EMPLOYMENT SECURITY COMMISSION.

Supreme Judicial Court of Maine.

Argued June 8, 1981.

Decided July 23, 1981.

John C. Howard (orally), David S. Turesky, Portland, for plaintiff.

Susan Farnsworth, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C. J., and WERNICK, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

The Maine Employment Security Commission appeals from the judgment of the Superior Court, Cumberland County, which reversed the determination of the Commission that Charles Dibner was ineligible for unemployment benefits. The sole issue presented is whether Dibner had been paid wages in *two* quarters of his base year within the meaning of 26 M.R.S.A. § 1192(5). Since the Superior Court erred in reversing the Commission's decision, we in turn reverse the judgment of the Superior Court.

Dibner had worked for several years at Camp Truda, a summer camp for girls in Oxford formerly owned by Dibner's uncle. When his uncle died in the fall of 1977, Dibner entered into an agreement with his aunt to operate the camp for the 1978 season at a salary of $15,000. Because of the camp's financial problems relating to his uncle's death and the seasonal nature of the business, Dibner agreed to accept his salary in two installments, half in June and half in September. Dibner worked throughout the winter and spring preparing for the summer season. He did not receive the June installment when it was due, however, receiving it instead in July and August. The camp closed at the end of the year, leaving Dibner unemployed. He then applied for unemployment benefits in January 1979.

At the time Dibner applied for benefits, the Employment Security Law, 26 M.R.S.A. §§ 1041–1251, required for eligibility that the applicant:

has been paid wages of at least $250 for insured work in each of 2 different quarters in his base period and has been paid total wages of at least $900 in his base period for insured work.

P.L.1975, ch. 568 § 3 (repealed and replaced by P.L.1979, chs. 165, 515, codified at 26 M.R.S.A. § 1192(5)). In its ruling denying Dibner benefits, the Commission reasoned that he had not met the "two quarters" requirement because the late payment of the first installment made all of Dibner's salary payment fall into the same quarter.

On appeal, the Commission contends that the statute's plain language, legislative history, and case law supports its ruling. The Commission traces the history of the statute, focusing especially on the substitution of the word "paid" for "payable" or "earned" in the conditions for eligibility. It concludes that this change clearly indicates a legislative intent to require that wages be actually paid, not just accrued or owed. The Commission cites several cases from other jurisdictions adopting the same interpretation.

Dibner points out, however, that these cases concerned situations where the claimant earned wages in one quarter and received payment in another as standard payment procedure. Generally, the delayed payment came a few days into the next quarter as a result of the ordinary lag between the end of the work period and the payment date. Dibner does not argue that those cases were incorrectly decided. Instead, he contends that the situation here does not present the problems the legislature intended to eliminate by changing the statutory language to "paid." Where the delay in payment resulted from a breach of contract, not from the ordinary lag in calculating wages, Dibner reasons, the Commission and Court should not be concerned with the administrative burden resulting from calculating wages as they were earned rather than paid. Dibner concludes, therefore, as did the Superior Court, that the

beneficent purpose of the Employment Security Law would not be served by denying him compensation.

We disagree. We find sufficient indication of a proper legislative purpose (a) to limit eligibility by the statutory requirements and, more importantly, (b) to simplify administration of the act. Although as enacted in 1936 the law initially conditioned eligibility for benefits on the claimant's having "earned" a certain amount, P.L. 1935, ch. 192, § 4(e), the legislature later amended the measure of eligibility to wages "paid" rather than earned. P.L.1941, ch. 141, § 7; P.L.1967, ch. 398 § 3. In 1975 by section 3 of an act entitled "An Act to Limit Abuse of the Unemployment Insurance Fund and to Increase Unemployment Benefits," P.L.1975, ch. 568, the legislature added the requirement at issue here: that an individual must have *been paid* at least $250 "in each of 2 different quarters in his base period."

We think that the legislature could rationally conclude that a line should be drawn to limit eligibility and to simplify the administrative determination of eligibility. That some seeming unfairness will result is obvious. Here, for example, had Dibner received his salary as agreed,[1] he clearly would have been eligible for benefits. That is one of the consequences of legislative linedrawing.

Because of the unusual factual situation, one might be tempted to suggest that finding an exception for this one case would create little administrative burden. No imagination is necessary, however, to conjure up a variety of other circumstances that would lead to challenge under any rule of flexibility adopted herein. Even if limited to cases showing a breach of contract, the rule would force the agency into the complex area of contract interpretation. Indeed, upon one interpretation of the record in this case, the agency might have been plunged into questions of novation or estoppel. We find no indication that the

---

1. Because of our interpretation of the statutory requirement, we need not consider whether the Commission's finding that Dibner agreed to the

delay in payment was supported by competent evidence.

legislature intended the Commission to assume such a role. Instead, we are satisfied that considerations of administrative convenience warrant giving great deference to the interpretation of the statute adopted by the agency. We find, therefore, that the Superior Court erred in ruling that Dibner was entitled to unemployment benefits.

The entry is:

Judgment of the Superior Court reversed.

Remanded to the Superior Court for the entry of judgment affirming the decision of the Employment Security Commission.

All concurring.